# Commonwealth v. Sutton, Appellant.

*Homicide—Charge of court—Degrees of murder—Instructions as to manslaughter.*

In the great caution exercised in the trial of homicides, the instruction as to manslaughter should usually be given. It is only in clear cases that it can properly be omitted, whether specially requested or not. In a homicide case where there is no room for doubt that the crime is not manslaughter, it is not error to refuse instructions as to that offense.

It is always the duty of the jury to ascertain the degree of murder, and an imperative instruction that takes from them the right to do so is erroneous; but it is always within the province of the court to point out their duty under the law and the evidence, leaving them free to act.

The reason for the rule that the jury must always be left free to act in ascertaining the degree, and that it is error to give peremptory instructions on the subject, is that this duty is committed to the jury by the statute. But there is no such requirement in distinguishing between murder and manslaughter, and unless there is something in the testimony to reduce the grade below murder, it is not error to decline to instruct the jury as to manslaughter.

Argued March 16, 1903. Appeal, No. 46, Jan. T., 1903, by defendant, from judgment and sentence of O. & T. Phila. Co., March Sessions, 1902, No. 514, on verdict of guilty of murder of the first degree, in case of Commonwealth v. George W.

Sutton.   Before MITCHELL, DEAN, FELL, BROWN and POT-
TER, JJ.   Affirmed.

Indictment for murder.   Before RALSTON, J.

Verdict of guilty of murder of the first degree upon which
sentence of death was pronounced.

The facts and the material errors assigned sufficiently appear
by the opinion of the Supreme Court.

*John McClintock, Jr.,* and *Robert B. Kelly,* for appellant.—
The court should have instructed the jury on the subject of
manslaughter and to refuse to do so was error: Rhodes v.
Com., 48 Pa. 396; Heine v. Com., 91 Pa. 145 ; Cathcart v.
Com., 37 Pa. 108; Brown v. Com., 76 Pa. 319; McClain v.
Com., 110 Pa. 263 ; Clark v. Com., 123 Pa. 555 ; McMeen
v. Com., 114 Pa. 300 ; Com. v. Crossmire, 156 Pa. 304 ; Com. v.
Eckerd, 174 Pa. 137 ; Com. v. Van Horn, 188 Pa. 143 ; Com.
v. Hillman, 189 Pa. 548 ; Com. v. McGowan, 189 Pa. 641 ;
Com. v. Morrison, 193 Pa. 613 ; Com. v. Sheets, 197 Pa. 69.

*Frederick J. Shoyer,* assistant district attorney, with him
*John Weaver,* district attorney, for appellee.

OPINION BY MR. JUSTICE FELL, May 4, 1903 :

The only specifications of error that need be noticed are
those that relate to the failure of the court to define manslaugh-
ter, and to instruct the jury in relation thereto.   By the fourth
point the court was asked to charge : " Manslaughter is the
unlawful and felonious killing of another without malice, either
express or implied.   Manslaughter differs from murder in this,
that although the act which occasions the death be unlawful,
or likely to be attended with bodily mischief, yet the malice
either express or implied, which is the very essence of mur-
der, is presumed to be wanting, and the act being imputed to
the infirmity of human nature, the punishment is proportion-
ately lenient;" by the fifth point: " Voluntary manslaughter is
the unlawful killing of another without malice on sudden
quarrel, or in the heat of passion ;" and by the thirteenth point :
" Where death results from the unlawful killing of another
without malice on sudden quarrel, or in the heat of passion,

the verdict should be manslaughter." The answer given by the court was that the fourth and fifth points were covered by the charge. The thirteenth was declined. This action of the court is alleged as error in the twenty-second, twenty-third and twenty-fourth assignments.

The facts connected with the killing of Gertrude Gothie that throw any light on the question to be considered are these : She was engaged to be married to the prisoner, but insisted upon his becoming a member of the Catholic Church before their marriage. He had not yielded to her wishes in this regard and had tried to induce her to marry him without his joining the church. On the 20th of February, 1902, she was confined to her bed by sickness. He called to see her and was in her room several minutes with her and her mother. Her mother, soon after leaving the room, heard the sound of a pistol shot, and returning found her daughter lying dead on the bed with three bullet wounds. The prisoner was lying partly on the bed, with a pistol in his hand and with one bullet wound. The explanation made by the prisoner to the officers who arrested him and to others at the police station was that Gertrude had felt the pistol in his pocket, and in a struggle for its possession it had been discharged; that the first shot was accidental and went through her hand; that being alarmed and fearing arrest he had shot her again and shot himself. The theory of the commonwealth was that he had shot her in pursuance of a deliberate purpose to take her life and to commit suicide. There was not the slightest evidence of a quarrel, nor of sudden heat or passion, nor of provocation to reduce the grade of the crime to manslaughter. Under these circumstances did the court err in declining to charge as requested?

In the general charge the court read the statute defining murder of the first and second degrees, and after pointing out briefly but clearly the distinction between the different degrees said: "There are other grades of homicide, manslaughter and several others. The court will not instruct you as to them because there is no evidence in this case of manslaughter and of the other grades of homicide. . . . The first question which you have to determine is whether any crime was committed. Was there an accident? Of course if there was an accident, no crime was committed and the defendant is not

guilty. If you find that a crime has been committed, it then becomes your duty to consider all the evidence in the case, and determine what was the grade of the crime. If a crime was committed, the crime was murder, and it is your duty to fix the degree of murder. Say whether the first or second degree." Any failure to instruct as to voluntary manslaughter was cured by the more favorable instruction that "If there was an accident, no crime has been committed, and the defendant is not guilty," and by the affirmance of the defendant's fifteenth point: "If the wound which caused the death of Gertrude Gothie resulted from the accidental discharge of a pistol in the possession of the defendant, he is not guilty of murder." In brief the substance of the whole instruction was that if the killing was accidental, the prisoner should be acquitted; that there was no evidence to warrant a finding of voluntary manslaughter; that if a crime was committed, it was murder, and if the jury so found they were to determine the degree.

It is always the duty of the jury to ascertain the degree of murder, and an imperative instruction that takes from them the right to do so is erroneous. But it is always within the the province of the court to point out their duty under the law and the evidence, leaving them free to act: Rhodes v. Commonwealth, 48 Pa. 396; Lane v. Commonwealth, 59 Pa. 371; Shaffner v. Commonwealth, 72 Pa. 60; McMeen v. Commonwealth, 114 Pa. 300; Commonwealth v. Sheets, 197 Pa. 69. The reason for the rule that the jury must always be left free to act in ascertaining the degree, and that it is error to give peremptory instructions on the subject, is that this duty is committed to the jury by the statute. The law is so written. But there is no such requirement in distinguishing between murder and manslaughter, and unless there is something in the testimony to reduce the grade below murder, it is not error to decline to instruct the jury as to manslaughter. In Brown v. Commonwealth, 76 Pa. 319, the complaint against the charge was that the court did not instruct the jury that there might be a conviction for manslaughter under the count for murder. It was held that as there was no question but that the homicide was murder, the prisoner was not entitled to the instruction. In Commonwealth v. Buccieri, 153 Pa. 535, it was said by our Brother DEAN: " The prisoner had a right to instructions on the

law applicable to the evidence ; as there was no evidence which in the remotest degree pointed to the offense as manslaughter, the court committed no error in not noticing the point." In Commonwealth v. Crossmire, 156 Pa. 304, it was said : "There was no evidence to reduce the homicide to manslaughter, and there was therefore no error in the omission to instruct in regard to it." In Commonwealth v. Eckerd, 174 Pa. 137, the failure of the court to instruct the jury on the law of manslaughter was held not to be error on the ground that there was nothing in the evidence to reduce the crime to manslaughter. In some of these cases the reason given for affirmance is that the instructions were not asked for, and the prisoner had therefore no ground of complaint. In others instructions were asked for, and the decisions are put upon the ground that the prisoner was not entitled to instructions on a question not legitimately raised by the testimony. In the great caution exercised in the trial of homicides, the instruction as to manslaughter has usually been given, and it is only in clear cases that it can properly be omitted, whether specially requested or not. In this case there was no room for doubt, as the prisoner's statement and all the circumstances connected with the killing made it absolutely clear that the crime was not voluntary manslaughter.

The judgment is affirmed, and it is directed that the record be remitted to the court of oyer and terminer of Philadelphia county for the purpose of carrying the sentence into execution.