384 A.2d 1197

**COMMONWEALTH of Pennsylvania**

**v.**

**Michael Francis Anthony MANNING, Appellant.**

Supreme Court of Pennsylvania.

Argued March 24, 1977.

Decided March 23, 1978.

John R. Gailey, Jr., York, for appellant.

Donald L. Reihart, Dist. Atty., Floyd P. Jones, York, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

POMEROY, Justice.

Appellant Michael Francis Manning was convicted in the Court of Common Pleas of York County on two counts of murder in the first degree. After denying his post-trial motions, the trial court imposed a sentence of two consecutive terms of life imprisonment. From that judgment of

sentence the within appeal was taken.[1]  For the reasons set forth below, we must reverse and remand for a new trial.

Appellant has briefed six assignments of error.  In view of our disposition of the case on the ground that the trial court failed to instruct the jury completely on the definition of voluntary manslaughter, we need not reach the remaining issues.[2]

Appellant specifically requested the trial court to instruct the jury on the elements of voluntary manslaughter in the language of the Crimes Code, 18 Pa.C.S. 2503(b) (1973).[3] The definitional portions of Section 2503 provide as follows:

"(a) General rule.—A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:

(1) the individual killed; or

1.  This Court has jurisdiction of the appeal under the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, art. II, § 202(1), 17 P.S. § 211.202(1) (Supp.1977–78).

2.  These issues are as follows:
(1) The trial court erred in denying the motion to suppress evidence of the results of tests on blood and urine samples taken from Manning after his arrest;
(2) The court erred in admitting such evidence because the Commonwealth had failed to meet its burden of proof as to the chain of custody of the samples;
(3) The court erred in overruling objections to the Commonwealth's cross-examination of defense character witnesses;
(4) The court erred in refusing to charge the jury on involuntary manslaughter, and
(5) The court erred in refusing to charge the jury that Manning's ingestion of large amounts of drugs could negate the general intent element of the various degrees of homicide with which he was charged.

3.  Appellant's brief asserts that the trial court erred in refusing defendant's point for charge No. 10 and a verbal request for a charge, both having to do with voluntary manslaughter.  The record before us contains no written points for charge, but the appellee's brief seems to accept the fact that such points were submitted.  The transcript of testimony does show that defendant made a timely request that the court charge the jury in the language of § 2503(b) of the Crimes Code.

(2) another whom the actor endeavors to kill, but he negligently or accidentally causes the death of the individual killed.

"(b) Unreasonable belief killing justifiable.—A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this title, but his brief is unreasonable."

At his trial Manning testified that he had consumed large quantities of various drugs during the period immediately preceding his killing of the two victims, Joseph Anastasio and his girlfriend, Victoria Roehrs. On May 19, 1975, Manning said, he had quarreled with Anastasio in the back yard of Manning's residence over difficulties involved in a proposal that they jointly purchase a certain farm. After the quarrel Manning entered his house, obtained a high-powered rifle, inserted ammunition and from his porch fired several shots over the heads of persons in the back yard. Appellant repeatedly demanded that Anastasio leave the premises and threatened to kill him. The uncontradicted testimony shows that when Anastasio appeared from behind a garage, appellant fired one shot at him, striking him in the chest. Victoria then ran towards Anastasio, and the appellant fired six shots at her, hitting her five times. Appellant came outside, shot Anastasio once more at close range, killed the victim's dog and piled up the bodies before disappearing into a nearby wooded area.

Manning testified that he had no memory of the actual events. Instead, he claimed to have seen two gargoyles flying in the air and a snake crawling in the yard, at which objects he had directed his shots.

On the record before him, the trial judge held that Section 2503(b), *supra*, by its terms, did not apply to the case. He reasoned:

"This section presupposes an intentional killing. However, this Defendant claims that he had no intention of shooting anyone, that he shot at two flying gargoyles and

a snake, and that he did not recall seeing anyone in the area. Secondly, the section does not apply to any killing which an accused may feel [is] justified for any reason, but to an unreasonable belief of justification . . . or more specifically that the killing was justified in self-defense and in the protection of others. The Defendant did not claim that he was in mortal fear of his own life from these gargoyles and snakes, but to the contrary testified that the gargoyles were not attacking but just flying. Protection of others is obviously not an available theory, not only because the gargoyles were not attacking, but because the Defendant does not recall seeing others that needed protection." Opinion attached to Appellant's brief, at pp. 27–28.

This ruling would have been acceptable under the law prior to this Court's decision in *Commonwealth v. Jones*, 457 Pa. 563, 319 A.2d 142, *cert. den.*, 419 U.S. 1000, 95 S.Ct. 316, 42 L.Ed.2d 274 (1974), and the decision of the Court of Appeals for the Third Circuit in *United States ex rel. Matthews v. Johnson*, 503 F.2d 339 (3rd Cir. 1974), *cert. denied sub nom Cuyler v. Matthews*, 420 U.S. 952, 95 S.Ct. 1336, 43 L.Ed.2d 430 (1975). Both of these cases hold, in essence, that a trial judge has or should have no discretion to deny a defendant charged with criminal homicide a requested charge on voluntary manslaughter. See also *Commonwealth v. Cain*, 471 Pa. 140, 369 A.2d 1234 (1977) (opinions in support of affirmance); *Commonwealth v. Hilliard*, 471 Pa. 318, 370 A.2d 322 (1977). From the premise that a defendant charged with murder has a clear right to receive such an instruction on request, whatever the nature of the evidence presented or of his defense, it follows that he has an unconditional right on request to an instruction on the complete statutory definition of the offense of voluntary manslaughter. The trial court did charge on that aspect of voluntary manslaughter covered by subdivision (a) of § 2503; it did not charge on the aspect covered by subdivision (b), which is equally a part of the offense. This omission was apparently because it could find no evidence pointing to an

unreasonable belief on the part of appellant that the killing was justifiable. But it is now impermissible to omit a charge on voluntary manslaughter, in whole or in part, because of a lack of a basis for a manslaughter verdict in the evidence. Such an omission was error which requires that a new trial be had.

Judgment of sentence reversed and case remanded for a new trial.

ROBERTS, J., filed a concurring opinion.

NIX, J., filed a dissenting opinion.

ROBERTS, Justice, concurring.

The majority holds that a defendant charged with criminal homicide is entitled upon request to a jury instruction providing a complete statutory definition of the offense of voluntary manslaughter. I agree. *Commonwealth v. Cain*, 471 Pa. 140, 171, 369 A.2d 1234, 1250 (1977) (Opinion in Support of Reversal of Roberts, J., joined by O'Brien and Manderino, JJ.); *Commonwealth v. Jones*, 457 Pa. 563, 577, 319 A.2d 142, 150 (1974) (Opinion in Support of Reversal of Roberts, J., joined by Pomeroy and Manderino, JJ.), cert. denied, 419 U.S. 1000, 95 S.Ct. 316, 42 L.Ed.2d 274 (1974).

NIX, Justice, dissenting.

The majority holds that a defendant, "whatever the nature of the evidence presented or of his defense, has an unconditional right, on request, to an instruction on the complete statutory definition of the offense of voluntary manslaughter." It is asserted that this conclusion is mandated by this Court's decision in *Commonwealth v. Jones*, 457 Pa. 563, 319 A.2d 142, *cert. denied*, 419 U.S. 1000, 95 S.Ct. 316, 42 L.Ed.2d 274 (1974). The majority fails to consider that in *Commonwealth v. Jones, supra*, we were addressing a killing under the 1939 Penal Code,[1] whereas

1. Act of June 24, 1939, P.L. 872, § 701, *amended*, Act of Dec. 1, 1959, P.L. 1621, § 1, 18 P.S. § 4701 (repealed 1972).

today's decision is governed by the 1972 Crimes Code.[2] I believe this distinction is critical and that *Commonwealth v. Jones, supra*, is not controlling in the present case.

The 1939 Penal Statute and those statutes preceding it[3] did not attempt to define the crimes of murder and voluntary manslaughter, but rather incorporated the concepts of the common law as explicated in *Commonwealth v. Drum*, 58 Pa. 9 (1868); *Commonwealth v. Redline*, 391 Pa. 486, 492, 137 A.2d 472, 474 (1950). Part of our common law heritage in this regard was the principle that the jury always has the power under a murder indictment to return a verdict of voluntary manslaughter although the classical requirements of voluntary manslaughter were absent. *See Commonwealth v. Hill*, 444 Pa. 323, 281 A.2d 859 (1971); *Commonwealth v. Hoffman*, 439 Pa. 348, 266 A.2d 726 (1970); *Commonwealth v. Harry*, 437 Pa. 532, 264 A.2d 402 (1970); *Commonwealth v. Dennis*, 433 Pa. 525, 252 A.2d 671 (1969); *Commonwealth v. Cooney*, 431 Pa. 153, 244 A.2d 651 (1968); *Commonwealth v. Pavillard*, 421 Pa. 571, 220 A.2d 807 (1966); *Commonwealth v. Frazier*, 420 Pa. 209, 216 A.2d 337 (1966); *Commonwealth v. Frazier*, 411 Pa. 195, 191 A.2d 369 (1963); *Commonwealth v. Moore*, 398 Pa. 198, 157 A.2d 65 (1959); *Commonwealth v. Steele*, 362 Pa. 427, 66 A.2d 825 (1949); *Commonwealth v. Arcuroso*, 283 Pa. 84, 128 A. 668 (1925); *Commonwealth v. Kellyon*, 278 Pa. 59, 122 A. 166 (1923). This principle was a corollary to the rule that upon an indictment for a particular crime, the defendant may be convicted of a lesser offense included within it. *Commonwealth v. Soudani*, 398 Pa. 546, 159 A.2d 687 (1960). The rationale of this principle as it has been applied in homicide cases has been set forth as being two-fold:

"First, it was intended to prevent the prosecution from failing where some element of the crime of murder was not made [out]. Second, it was designed to redound to the

2. Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1 et seq., as amended, 18 Pa.C.S.A. § 101 et seq. (Supp.1977–78).

3. Act of March 31, 1860, P.L. 402, No. 374, § 74; Act of April 22, 1794, ch. 1766, § 2, 1791–1802 Pa.Laws 187.

benefit of the defendant, since its effect is actually to empower the jury to extend mercy to an accused by finding a lesser degree of crime than is established by the evidence." (Footnote omitted).

*Commonwealth v. Jones, supra,* 457 Pa. at 569, 319 A.2d at 146.

In view of this firmly embedded common law, in *Jones* I was persuaded that it was jurisprudentially sound to remove the discretion from the trial court and require the giving of an instruction of voluntary manslaughter in any case where such a request was made by the accused. I was particularly influenced in reaching this conclusion by the fact that although our cases had clearly given the trial court the right to deny the request where there was no rational basis for such a verdict,[4] we had not unequivocally prohibited the granting of such a request where there was an absence of a rational basis. To the contrary, we had frequently held that under an indictment charging murder, an accused may be convicted of voluntary manslaughter even though it clearly appeared from the evidence that there was an absence of the traditional elements of the crime of manslaughter.[5]

4. *Commonwealth v. Dews,* 429 Pa. 555, 558, 239 A.2d 382, 384 (1968); *Commonwealth v. LaRue,* 381 Pa. 113, 112 A.2d 362 (1955); *Commonwealth v. Flax,* 331 Pa. 145, 200 A. 632 (1938); *Commonwealth v. Pava,* 268 Pa. 520, 112 A. 103 (1920); *Commonwealth v. Morrison,* 266 Pa. 223, 109 A. 878 (1920):

> "[I]t is the duty of the court to submit the question of manslaughter unless it is clearly convinced there is nothing in the evidence to reduce the grade of the crime below murder; while the jury must be free to act in determining the degree of murder, there is no such requirement in distinguishing between murder and manslaughter."

See Also, *Commonwealth v. Sutton,* 205 Pa. 605, 55 A. 781 (1903); *Clark v. Commonwealth,* 123 Pa. 555, 16 A. 795 (1889).

5. *Commonwealth v. Hill,* 444 Pa. 323, 326, 281 A.2d 859, 860 (1971); *Commonwealth v. Hoffman,* 439 Pa. 348, 356–57, 266 A.2d 726, 730–31 (1970); *Commonwealth v. Harry,* 437 Pa. 532, 535, 264 A.2d 402, 404 (1970) (per curiam); *Commonwealth v. Dennis,* 433 Pa. 525, 528–29, 252 A.2d 671, 672–73 (1969); *Commonwealth v. Cooney,* 431 Pa. 153, 157, 244 A.2d 651, 653 (1968); *Commonwealth v. Pavillard,* 421 Pa. 571, 576–77, 220 A.2d 807, 810 (1966); *Commonwealth v. Frazier,* 420 Pa. 209, 211–13, 216 A.2d 337, 338 (1966); *Commonwealth v. Frazier,* 411 Pa. 195, 202, 191 A.2d 369, 373 (1963);

However, it is my view that the enactment of the 1972 Crimes Code provided a significant departure from this precedent and affords us the opportunity to reassess the wisdom and present utility of these principles. The enactment of the 1972 Crimes Code evidenced an unequivocal intent on the part of the Legislature to depart from reliance upon the common law for the definition of criminal offenses within this Commonwealth. While a number of the newly announced statutory crimes are quite similar to their common law counterpart, there are many other instances where there are significant changes. Additionally, new crimes not heretofore recognized have been articulated as well as previously existing crimes rejected. We are now freed from the strictures of the conceptual abstractions of the past. Our present concern should be to fashion those principles that will enhance the sound administration of justice. Therefore, before continuing to embrace these doctrines in this context, we should reexamine their present utility.

In my judgment neither lesser included offense nor the mercy dispensing power provide a compelling reason for the adoption of the rule today by the majority. An analysis of the lesser included offense approach would suggest that it is only compelling in those instances where there exists a factual dispute as to the presence or absence of an element of the greater offense, which element is *not* a component part of the lesser offense. *Commonwealth v. Gartner and Pfaff*, 475 Pa. 512, 381 A.2d 114 (1978) (dissenting opinion). Where the controversy centers around elements common to both the greater and the lesser offenses, it is arbitrary and capricious to allow a fact finder the freedom to choose the verdict to be returned.

I am also unimpressed by those arguments offered by those who advocate vesting in the jury some undefined

*Commonwealth v. Moore*, 398 Pa. 198, 157 A.2d 65 (1959); *Commonwealth v. Nelson*, 396 Pa. 359, 363, 152 A.2d 913, 915 (1959); *Commonwealth v. Steele*, 362 Pa. 427, 430, 66 A.2d 825, 827 (1949); *Commonwealth v. Kellyon*, 278 Pa. 59, 61–62, 122 A. 166, 167 (1923); *Commonwealth v. McMurray*, 198 Pa. 51, 60, 47 A. 952, 953 (1901); *Commonwealth v. Gable*, 7 S. & R. 422 (Pa.1821).

quantum of "mercy dispensing power." As noted in *Gartner* and *Pfaff*, "the term 'mercy dispensing power' is merely an euphemism to justify a rationally unsupportable verdict." "Not only does this approach invite arbitrary action by juries, it also leaves a reviewing court powerless to ascertain and to remedy discriminatory verdicts." Id. 475 Pa. at 533, 381 A.2d at 125 (dissenting opinion) (footnote omitted).

In my view our jurisprudence would be best served by abandoning these doctrines of the past and vesting in the prosecutor the charging decision.

"The charging decision is properly a prosecutorial function. See *Commonwealth ex rel. Davis v. Reid*, 338 Pa. 351, 12 A.2d 909 (1940); A.B.A. Standards on The Prosecution Function, §§ 3.5, 3.9 and Commentaries (approved draft 1971). See Generally, *Commonwealth ex rel. Specter v. Martin*, 426 Pa. 102, 232 A.2d 729 (1967); *Commonwealth ex rel. Specter v. Bauer*, 437 Pa. 37, 261 A.2d 573 (1970). The prosecutor's awareness of the strengths and the weaknesses of his case places him in the best possible position to assess whether a jury would be likely to reject a verdict of the higher grade of homicide under a given set of facts. I, therefore, suggest that the appropriate rule would be to give the option to the district attorney of charging all of the grades of criminal homicide or to permit him to select the specific charge or charges he deems appropriate under the evidence he intends to present. In the event that he chooses the latter course and the jury sees fit to acquit the accused, then under this Court's decision in *Commonwealth v. Campana*, [452 Pa. 233, 304 A.2d 432, vacated and remanded, 414 U.S. 808, 94 S.Ct. 73, 38 L.Ed.2d 44 (1973), on remand, 455 Pa. 622, 314 A.2d 854, cert. denied, 417 U.S. 969, 94 S.Ct. 3172, 41 L.Ed.2d 1139 (1974)], supra, subsequent Prosecution for the offenses not initially charged, would be barred. Additionally, this approach would encourage responsible charging by the prosecutor and deter the 'boiler-plate' charging of accused."

*Commonwealth v. Garcia,* 474 Pa. 449, 471, 378 A.2d 1199, 1215 (1977) (footnotes omitted) (dissenting opinion).[6] Accordingly, it is my view that the trial court did not err in denying the requested instruction for voluntary manslaughter and I would therefore affirm the judgment of sentence.

**6.** Although *Commonwealth v. Garcia,* 474 Pa. 449, 378 A.2d 1199 (1977) involves a request for an involuntary manslaughter instruction, the principles for which I am citing this case would apply as well to cases involving the request for a voluntary manslaughter instruction as in the instant case.