Commonwealth *v.* Steele, Appellant.

428

Argued April 11, 1949. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*John M. Bennett,* for appellant.

*David C. Wolfe,* First Assistant District Attorney, with him *Samuel R. DiFrancesco,* District Attorney, for appellee.

OPINION BY MR. JUSTICE DREW, June 24, 1949:

LaRue Steele was killed on March 20, 1948, by a bullet from a .22 caliber rifle. The bullet entered the victim's cheek and lodged in her brain causing almost instant death. Her husband, Blair F. Steele, defendant, admitted firing the fatal shot, but claimed that the shooting was accidental. Defendant was tried on an

indictment charging murder and voluntary manslaughter and was found guilty on the latter count. After denying motions in arrest of judgment and for a new trial, the learned court below imposed a sentence of from two to five years, and this appeal followed.

On the morning of March 20, 1948, the .22 caliber rifle, with which the fatal wound was inflicted, was sitting just inside the door of the bedroom which defendant and his wife shared in their home in Nanty-Glo, Cambria County. That morning defendant arose at nine o'clock leaving his wife and her seven year old son by a previous marriage in bed asleep. Upon arising, defendant performed certain chores about the house, then returned to the bedroom and called to his wife that it was time to get up. After her unintelligible reply, defendant picked up the rifle, pointed it in her direction and again told her to get up. He then pulled the trigger and the gun fired causing the fatal wound. At the trial, defendant testified that he thought the rifle was not loaded and that in picking it up, he was "kidding or fooling". He further stated that he did not intend to shoot her, and that he didn't remember putting his finger on the trigger but that he must have done so or the gun would not have fired. No other persons witnessed the shooting.

Testimony on behalf of the Commonwealth revealed that defendant was inclined to be quick tempered and "hot-headed". Four witnesses testified that he had quarreled with his wife frequently and would often call her profane names. Several of those witnesses also said that they had heard him, on different occasions, threaten to kill her and that at least once he had hit her and knocked her down. There was further testimony that defendant's wife had told him she would have to leave him, and he replied, "No woman will ever leave me"; that a few months prior to her death, she had left him

for a period of two weeks, and upon her return he threatened to beat her again.

Defendant argues that there was no evidence that the shot was fired in the heat of passion and, therefore, the conviction for voluntary manslaughter cannot stand. It has long been established that under an indictment for murder, a jury may return a verdict of voluntary manslaughter, though the evidence is insufficient to show passion or provocation, where the record discloses that defendant properly could have been convicted of murder: *Commonwealth v. Arcuroso,* 283 Pa. 84, 128 A. 668; *Commonwealth v. Kellyon,* 278 Pa. 59, 122 A. 166. In such cases, the jury is not bound to accept the version either of the Commonwealth or that of the defense, but must determine from the evidence what the true situation was at the time of the homicide: *Commonwealth v. Peyton,* 360 Pa. 441, 62 A. 2d 37; *Commonwealth v. Flax,* 331 Pa. 145, 200 A. 632; *Commonwealth v. Colandro,* 231 Pa. 343, 80 A. 571.

In the instant case, the testimony as to frequent quarrels and the wife's assertion that she would leave defendant establish the fact of an unhappy marriage. Defendant's threats and his statement that no woman would ever leave him are indicative of his temperment and tend to show motive. Furthermore, the use of the rifle, an admittedly deadly weapon, on a vital part of his wife's body gives rise to the inference that defendant intended the natural and probable result of his act, that result being the death of his wife: *Commonwealth v. Pasco,* 332 Pa. 439, 2 A. 2d 736; *Commonwealth v. Weston,* 297 Pa. 382, 147 A. 79; *Commonwealth v. Drum,* 58 Pa. 9. It is true that the defense of accident can negative the inference but the jury, by its verdict, rejected that defense. There was overwhelming evidence including his own to justify the jury in finding him guilty of murder and certainly he cannot complain since the jury extended him such great leniency.

To show defendant's experience with weapons and thereby minimize the possibility that the shooting was accidental, the Commonwealth introduced into evidence defendant's army discharge which set forth that he had qualified as a marksman with the M-1 rifle. Defendant takes the position that the discharge certificate is a purely private record and constitutes inadmissible hearsay. Wigmore on Evidence (3d Ed.), Vol. 5, Section 1675 (a), states: "A certificate of *service* in army, navy, or civil office, made pursuant to duty imposed by custom or statute is admissible, on principle. In the first place, it is virtually no more than a certified copy, in summary, of the regular record of service kept in the department . . . In the next place, it is made for the specific purpose of being exhibited and used; and to shut off its use in courts is to defeat its purpose in part." We are convinced of the soundness of that rule and of its applicability in this case. Moreover, the discharge was not the sole evidence of defendant's familiarity with firearms. It was undisputed that at the time of the killing he had in his possession five guns of various types with which he did considerable hunting. Therefore, we find no error in the admission of the discharge certificate.

There is no basis for the assertion by defendant that the charge of the trial judge minimized the defense of accident. The charge was a comprehensive one in which the court repeatedly instructed the jury to return a verdict of not guilty if they believed that the shooting was accidental. In view of the thoroughness of the charge, nothing would have been added by informing the jury that an indictment for involuntary manslaughter was pending against defendant for the same killing.

There is nothing contained in this entire record which is in any way harmful or prejudicial to the rights of defendant.

Judgment affirmed.