Commonwealth *v.* Cooney, Appellant.

Argued April 18, 1968. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*I. B. Sinclair,* for appellant.

*Vram Nedurian, Jr.,* Assistant District Attorney, with him *Ralph B. D'Iorio,* Assistant District Attorney, *William R. Toal, Jr.,* First Assistant District Attorney, and *Stephen J. McEwen, Jr.,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. CHIEF JUSTICE BELL, August 6, 1968:

Carl Joseph Cooney was charged with murder, voluntary manslaughter and involuntary manslaughter arising out of the killing of Sylvia Jackson Cooney. He was tried by a jury and found not guilty of murder, but guilty of voluntary manslaughter. He has appealed from the judgment of sentence, which consisted of a fine of $500 and imprisonment for not less than four or more than eight years.

Cooney makes a number of contentions in this appeal. First, he contends that there was no testimony establishing passion, and therefore the jury could not find him guilty of voluntary manslaughter.

We shall summarize the evidence.

Cooney, a former police officer and State parole agent, was estranged from his wife, who was the mother of their three children. In 1963, he met the victim, Sylvia Jackson, and lived with her thereafter as man and wife, although they were never legally married. She was known as and represented by Cooney as his

wife, and bore a child by him who was six months of age at the time of her death. After living in California for a brief time, Cooney and Sylvia returned to live at the home of her parents in the City of Chester. On December 31, 1966, Cooney and Sylvia went to Philadelphia to attend a New Year's Eve celebration, where both had been drinking. They returned home at 4 A.M., rang the doorbell because neither had a key, and were let in by Sylvia's mother, Jennie Jackson. Mrs. Jackson testified that when she let the couple in, Cooney did not say anything, but "acted like he was mad." Cooney and Sylvia went upstairs to their bedroom, and shortly thereafter Mrs. Jackson, who was in an adjoining bedroom, heard Sylvia whisper, "Don't do that, don't do that, don't do that," which was immediately followed by three shots. Mrs. Jackson and her husband, Arthur Jackson, who was also in the adjoining bedroom and who also heard the three gunshots, ran into Sylvia and Cooney's bedroom and saw their daughter and Cooney lying on the floor. Jackson testified that he sat down on the bed and picked his daughter up in his arms "trying to make her live. I wanted to make her live." He further testified that Cooney, although continuing to lie on the floor, was conscious and had looked up at him. A gun, which was used in the shooting, and which was found on the bed approximately six feet away from Cooney, had been acquired by Cooney some years before in connection with his service as a policeman.

Cooney took the stand in his defense and testified that after coming home from the party he had gone into the bathroom, and upon returning to the bedroom found his wife holding the gun and pointing it at him. He said it "frightened me and I leaped at her—like this—for the gun." When he tried to yank the gun from her hand, the gun went off. There was an "explosion," he felt pain, and he did not recall what hap-

pened thereafter until he "woke up" at the police station. There was testimony, including that of Cooney, to the effect that there had been serious difficulties between Sylvia and Cooney prior to the shooting.

We are of the opinion that all of the combined evidence, considered in its entirety, was sufficient to justify a verdict of guilty of murder, and consequently the jury's verdict of voluntary manslaughter. In *Commonwealth v. Kravitz*, 400 Pa. 198, 161 A. 2d 861, in affirming previous rulings by this Court, we said (page 208) : " '. . . ". . . Proof by eye witnesses or direct evidence of the corpus delicti or of identity or of the commission by the defendant of the crime charged is not necessary. '. . . It is clearly settled that a man may be convicted on circumstantial evidence alone, and a criminal intent may be inferred by the jury from facts and circumstances which are of such a nature as to prove defendant's guilt beyond a reasonable doubt: . . .' . . .'' ' . . .''

In *Commonwealth v. Nelson*, 396 Pa. 359, 152 A. 2d 913, we said (pp. 364, 363) : "In Commonwealth v. Donough, 377 Pa., supra, the Court quoting from Commonwealth v. Palermo, 368 Pa. 28, 81 A. 2d 540, said (page 52) : ' " 'Voluntary manslaughter is a homicide intentionally committed under the influence of passion.' Commonwealth v. Colandro, 231 Pa. 343, 350, 80 A. 571 (1911) ; Commonwealth v. Cargill, 357 Pa. 510, 513, 55 A. 2d 373 (1947) . . .''

" 'In Commonwealth v. Colandro, 231 Pa. 343, 80 A. 571, the Court said (page 350) : . . .'" 'The term "passion" as here used includes both anger and terror provided they reach a degree of intensity sufficient to obscure temporarily the reason of the person affected:' Am. & Eng. Ency. of Law (2d ed.) 173. 'Passion, as used in a charge defining manslaughter . . . means any of the emotions of the mind known as anger, rage, sudden resentment or terror, rendering the mind

incapable of cool reflection;' 6 Words & Phrases, p. 5227." ' "

"In Commonwealth v. Steele, 362 Pa. 427, 66 A. 2d 825, the Court said (page 430) : 'Defendant argues that there was no evidence that the shot was fired in the heat of passion and, therefore, the conviction for voluntary manslaughter cannot stand. It has long been established that under an indictment for murder, a jury may return a verdict of voluntary manslaughter, though the evidence is insufficient to show passion or provocation, where the record discloses that defendant properly could have been convicted of murder: Commonwealth v. Arcuroso, 283 Pa. 84, 128 A. 668; Commonwealth v. Kellyon, 278 Pa. 59, 122 A. 166. In such cases, the jury is not bound to accept the version either of the Commonwealth or that of the defense, but must determine from the evidence what the true situation was at the time of the homicide: Commonwealth v. Peyton, 360 Pa. 441, 62 A. 2d 37; Commonwealth v. Flax, 331 Pa. 145, 200 A. 632; Commonwealth v. Colandro, 231 Pa. 343, 80 A. 571.' "

Where the Commonwealth's evidence, together with all reasonable inferences therefrom—which it is well established is the test to be applied after a conviction of guilty (*Commonwealth v. Senk,* 412 Pa. 184, 187, 194 A. 2d 221; *Commonwealth v. DeMoss,* 401 Pa. 395, 398, 165 A. 2d 14; *Commonwealth v. Moore,* 398 Pa. 198, 202, 157 A. 2d 65. See also, *Commonwealth v. Dickerson,* 406 Pa. 102, 176 A. 2d 421)—is adequate to establish beyond a reasonable doubt a conviction of murder, the jury may convict the defendant of voluntary manslaughter, even in the absence of evidence of passion: *Commonwealth v. Frazier,* 420 Pa. 209, 212-213, 216 A. 2d 337; *Commonwealth v. Frazier,* 411 Pa. 195, 202, 191 A. 2d 369; *Commonwealth v. Steele,* 362 Pa. 427, 66 A. 2d 825; *Commonwealth v. Nelson,* 396 Pa. 359, 152 A. 2d 913, and cases cited therein.

In *Commonwealth v. Frazier*, 420 Pa., supra, the Court pertinently said (page 212): "At the present trial, the same evidence of killing his wife without passion or legally adequate provocation was presented by the Commonwealth exactly as it was presented at the first trial. With respect to this evidence, we said in Commonwealth v. Frazier, 411 Pa., supra (page 202): 'While in view of the evidence, the verdict of voluntary manslaughter is difficult to understand, such a verdict is strictly within the jury's prerogative, and may be returned even in the absence of evidence of sufficient provocation and passion if the evidence as a whole is sufficient to warrant the defendant's conviction of murder: Commonwealth v. Steele, 362 Pa. 427, 66 A. 2d 825 (1949), and Commonwealth v. Nelson, 396 Pa. 359, 152 A. 2d 913 (1959).' "

Cooney further contends that several errors were committed by the Judge during the course of the trial which require the granting of a new trial. We have considered all of these alleged errors and find only two worthy of discussion.

Shortly after the shooting, the police arrived and found Arthur Jackson seated on the bed, holding the victim, and Cooney still on the floor. Cooney was taken into the bathroom where he changed his clothes, which were turned over to the police. He was then placed under arrest and, since he had a "mark alongside of his head," he was ordered to the hospital before being taken to the police building. At the hospital, Cooney was examined by a doctor, X-rayed, and treated for a superficial wound. The doctor testified that Cooney was "awake," and was "alert," but was unresponsive to routine questions regarding his wound.

Cooney did not object to the doctor's testimony, but contends that the trial Judge committed error in charging the jury that Cooney indicated his guilt by refusing to answer the doctor's questions. Although the

trial Judge referred to Cooney's refusal to answer the doctor, we do not agree that Cooney was harmed in any way. In the first place, Cooney's failure to answer the doctor's questions regarding his wound could not be considered a tacit admission, because he did not remain silent to an accusation or charge of his guilt by the doctor nor to any incriminating statement made or read by the doctor to him. The Judge charged that "this Physician was merely trying, as he said to you, to administer aid to this Defendant. . . . He tried to get from the Defendant something so he would know how to administer aid to him. . . . He was not a Police Officer. He is a Doctor in the Hospital trying to give him first aid or medical treatment . . . so he could treat him for his injury. . . ." Moreover, any misinterpretation which might have been entertained by the jury would certainly have been dispelled when the Judge reviewed the matter in the following colloquy: "MR. SINCLAIR: With the indulgence of the court, there is just one thing that has struck my mind that may cause a problem and that is, I do not believe the defendant at any time can be subjected to the claim that because he stood mute this might be an indication of guilt. This is something I overlooked in my exceptions and I think it is a very crucial point. THE COURT: There is no duty upon the defendant to speak or to answer any questions when he is taken into custody. MR. SINCLAIR: Even by the doctor. THE COURT: By any person. He is not obliged to talk. He is not obliged to answer any questions if he does not desire to do so, and his silence is not to be construed against him. MR. SINCLAIR: Thank you very much."

At the trial, Cooney's attorney argued that Sylvia's killing was accidental, and therefore the jury could and should find Cooney not guilty. In response to this theory, argument or contention, the trial Judge charged the jury on the law of homicide by misadven-

ture. The charge on this point was taken almost word for word from this Court's Opinion in *Commonwealth v. Flax*, 331 Pa. 145, 200 A. 2d 632, and recently reiterated by us in *Commonwealth v. Pavillard*, 421 Pa. 571, 220 A. 2d 807. Cooney's attorney now contends that, by so charging, the trial Judge placed the burden of this defense on the defendant. There is absolutely no merit in this contention. Not only was the charge correct, but the trial Judge after charging on misadventure specifically charged the jury that "the burden [of proof] is with the Commonwealth throughout the trial of the case."

Judgment of sentence affirmed.