Commonwealth *v.* Harry, Appellant.

Argued March 17, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Gerald E. Ruth,* for appellant.

*Harold N. Fitzkee, Jr.,* District Attorney, with him *Gary M. Gilbert,* Assistant District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, April 22, 1970:

Howard Harry, appellant, was tried before a jury on an indictment charging murder and manslaughter and was found guilty of voluntary manslaughter. This is a direct appeal from the judgment of sentence entered after the denial of post-trial motions. In this appeal appellant has raised two issues: (1) was the circumstantial evidence produced at trial sufficient to prove him guilty beyond a reasonable doubt, and (2) was the verdict of voluntary manslaughter against the weight of the evidence.

The law is well established that in considering the appeal of a defendant after a verdict the test of the sufficiency of the evidence—irrespective of whether it is direct or circumstantial—is whether accepting as true all the evidence upon which, if believed, the jury could have properly based its verdict, it is sufficient in law to prove the defendant's guilt beyond a reasonable doubt. *Commonwealth v. Brown,* 437 Pa. 1, 261 A. 2d 879 (1970); *Commonwealth v. Thomas,* 429 Pa. 227, 239 A. 2d 354 (1968); *Commonwealth v. Kravitz,* 400 Pa. 198, 161 A. 2d 861 (1960).

The testimony at trial discloses the following. Dale Anstine, the deceased, came to the home of George and Howard Harry at about 10:00 P.M. on December 23,

1968 for the purpose of a social visit. He brought with him half a gallon of wine, a fifth of whiskey and a case of beer. The deceased was confined to a wheel-chair, and the brothers helped him from his car to the house. From about 10:00 P.M. until 2:00 A.M. the three visited and drank the alcoholic beverages the deceased had brought. At approximately 2:15 A.M. George Harry fell asleep on the downstairs sofa, and he testified that as he fell asleep appellant and the deceased "was arguing back and forth and drinking and spittin and jawing at each other. . . ." The last thing he remembered was Howard telling Anstine to get out as he owned the place.

George testified that he was awakened at 3:45 A.M. by the sound of a gunshot. He rolled over on the sofa and saw the deceased sitting in the wheelchair with a wound below the butt of his ear. At the same time he heard his brother at the bottom of the steps on his way to the second floor. George attempted to push the deceased over to the sofa but could not because he was too big. He then called appellant to help, and Howard said "go to hell" and did not come down the steps. George testified that he did not see appellant holding the gun, that he did not see anyone in the room when he awakened and that the front door was unlocked.

A shotgun belonging to appellant and containing a spent shell case was lying on the floor beside the couch. George Harry picked up the shotgun, removed the empty cartridge which he placed in a wastebasket and placed the gun in a cave directly across the road from the house. Further testimony indicated that the shell George placed in the wastebasket was fired from appellant's gun and that the fatal wound was caused by a shot from a shotgun fired at close range.

Appellant testified that the three had been drinking and that he had told the deceased to quit drinking and go home because he would soon be too drunk to drive

his car. The last thing he remembered that night was falling asleep on the arm of a chair, and his next recollection was awakening the next morning. He stated he did not hear a shot and did not know how Dale Anstine was killed. He had contusions over his right eyelid and a laceration on his forehead, but he did not remember how he had sustained these injuries.

Appellant argues that the evidence was insufficient to prove his guilt beyond a reasonable doubt and also that the verdict of voluntary manslaughter was against its weight because there was no testimony of a killing under the influence of legal provocation or passion. This Court has held that even if there is no evidence of legal passion or provocation so as to require the court to charge the jury on voluntary manslaughter still the jury "may find a defendant who under the evidence of the Commonwealth has committed the crime of murder, guilty of voluntary manslaughter . . . in the absence of legal passion or provocation." *Commonwealth v. Pavillard*, 421 Pa. 571, 577, 220 A. 2d 807 (1966). In *Commonwealth v. Steele*, 362 Pa. 427, 430, 66 A. 2d 825 (1949), we stated, "It has long been established that under an indictment for murder, a jury may return a verdict of voluntary manslaughter, though the evidence is insufficient to show passion or provocation, where the record discloses that defendant properly could have been convicted of murder." See, also, *Commonwealth v. Heckathorn*, 429 Pa. 534, 241 A. 2d 97 (1968); *Commonwealth v. Frazier*, 411 Pa. 195, 191 A. 2d 369 (1963), and *Commonwealth v. Nelson*, 396 Pa. 359, 152 A. 2d 913 (1959).

Therefore, when reviewing a record upon appeal to consider the sufficiency of the evidence, a judgment of sentence based upon a verdict of guilty of voluntary manslaughter will be affirmed if the evidence as a whole is sufficient to warrant the appellant's conviction of murder. See *Frazier,* supra at 202. Having re-

536 

viewed the record carefully, we find evidence which the jury could have believed which would have been sufficient to prove appellant guilty of murder beyond a reasonable doubt.

The judgment of sentence is affirmed.