Commonwealth *v.* Davis, Appellant.

470

Argued April 17, 1972. Before Jones, C. J., Eagen, O'Brien, Roberts, Pomeroy and Manderino, JJ.

reargument refused December 29, 1972.

*I. Raymond Kremer,* with him *Neil H. Stein* and *Kremer, Krimsky & Luterman,* for appellant.

*Judith Dean,* Assistant District Attorney, with her *Milton M. Stein,* Assistant District Attorney, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

Opinion per Curiam, November 30, 1972:

Judgment of sentence affirmed by an evenly divided Court.

———

Opinion by Mr. Justice O'Brien in Support of Affirmance:

Some time in the morning of July 21, 1967, Mrs. Hattie Stirling discovered the dead body of her daughter, nine-year-old Vintress Stirling, in the apartment which Mrs. Sterling and Vintress shared with Mrs. Stirling's three younger children. The police, summoned by an aunt of the deceased, arrived on the premises at 8:30 a.m., where they found the victim's body, lying face up on the bed with bruises around her neck and face and with foam around her mouth.

On the basis of circumstantial evidence, the jury found appellant, Robert Davis, guilty of first degree murder. Appellant admitted that he had spent the entire night in the Stirling's apartment, allegedly waiting for Mrs. Stirling, who had gone out with a boyfriend, and that he had been admitted to the apartment by the victim. Mrs. Stirling testified that when she returned home at 1:30 a.m., the appellant threatened to kill her. She claimed that she attempted to check on

the welfare of her children, but appellant held up a sheet partially obscuring the decedent so that Mrs. Stirling did not suspect anything until, still in the company of appellant, she discovered the decedent's body the following morning.

The decedent's sister, Sandra, who shared a bed with the decedent and a younger sister, testified that she had awakened at sometime the previous evening to hear the appellant ask her where her sister usually slept, after which the appellant pushed the decedent up toward the head of the bed. Sandra had no idea whether her sister was alive or dead at the time.

At the trial of appellant, the Commonwealth sought to show that the victim had been killed before 1:30 a.m., but that this fact had been concealed from Mrs. Stirling. The appellant's theory was apparently that Vintress had been killed by an intruder sometime after 1:30 a.m., during which time appellant was, at all times, with Mrs. Stirling.

The Commonwealth's theory was that the murder was committed pursuant to an attempt to commit rape or sodomy on the victim. This theory was supported by evidence that acid phosphastase, an enzyme produced by the male during ejaculation, was found in the foam in the victim's mouth and by evidence that semen stains were found on the victim's bed linen and on the pajamas and panties she was wearing at the time of her death, as well as on appellant's shorts. Although appellant, by vigorous cross-examination, established that since acid phosphastase is also produced in the digestion of certain green vegetables and no sperm was discovered in the foam, the presence of semen in the victim's mouth was not clearly established; the appellant did not really contest the Commonwealth's theory that the victim had been murdered pursuant to an attempt to commit some sort of sexual abuse. Instead, appellant tried to show that the Commonwealth had not

linked him to the crime beyond a reasonable doubt. Nevertheless, the jury found appellant guilty of murder in the first degree and fixed the sentence at life imprisonment.

Although post-trial motions were filed for arrest of judgment or a new trial, at argument, appellant's counsel pressed only the motion for a new trial. The motion was denied and this appeal followed formal imposition of sentence.

The principal contention raised on appeal is that the court erred in charging the jury that, as a matter of law, they could not find the appellant guilty of voluntary manslaughter.

The court's charge on this question, occurring at the outset of the charge to the jury, was as follows:

"You may return a verdict of guilty of the charge of murder in the first degree, or you may find the defendant guilty of the charge of murder in the second degree, or you may find the defendant not guilty.

"Normally, when the charge is murder, the jury may also consider the charge of voluntary manslaughter. However, I instruct you as a matter of law in this case that manslaughter could not be considered. It would not be, under the facts in this case, an appropriate verdict. So, therefore, I instruct you to confine your consideration to the charge of murder in the first degree, or the charge of murder in the second degree, or not guilty. You have three possibilities."

At the conclusion of the charge, the court reiterated this instruction by telling the jury: "Your only concern, therefore, is whether this defendant is guilty of murder in the first degree or murder in the second degree or not guilty."

The appellant's counsel noted an exception to these instructions.

It has long been the law in Pennsylvania that a defendant is entitled to a charge on the law of man-

slaughter only when there is some evidence to support such a verdict. *Commonwealth v. Matthews*, 446 Pa. 65, 285 A. 2d 510 (1971) ; *Commonwealth v. Heckathorn*, 429 Pa. 534, 241 A. 2d 97 (1968). The appellant recognizes this, but argues that in the instant case, it was not the court's refusal to charge on manslaughter which constituted error, but its absolute and binding instructions to the jury that they could not consider manslaughter. However, in *Commonwealth v. Dews*, 429 Pa. 555, 558, 239 A. 2d 382 (1968), we permitted the court to charge: " 'the facts in this case do not indicate voluntary manslaughter . . . [and] I instruct you to disregard that grade of the offense.' "

Nevertheless, a number of members of our Court have, at various times in dissenting opinions, been disturbed by our practice, in cases where no evidence of passion or provocation which would reduce a case of murder to manslaughter is present, of permitting the trial court to use its discretion in deciding whether to refuse to give instructions on manslaughter or to instruct the jury that it should disregard manslaughter.

After pointing out that we have long accepted the common-law rule that a jury has the power to find a defendant guilty of voluntary manslaughter, even in the absence of passion or provocation, *Commonwealth v. Hoffman*, 439 Pa. 348, 266 A. 2d 726 (1970) ; *Commonwealth v. Kellyon*, 278 Pa. 59, 122 A. 166 (1923), the dissenters have argued that the due process and equal protection clauses of the Fourteenth Amendment are violated by our practice of leaving the question to the court's discretion, because we have not given trial judges the benefit of any objective standards to guide them in the exercise of their discretion. See *Commonwealth v. Matthews, supra*, at 81, dissenting opinion, and *Commonwealth v. Pavillard*, 421 Pa. 571, 220 A. 2d 807 (1966), dissenting opinion.

Although the establishment of objective standards for application in all cases must await the further development of our case law, we believe that the instant case presents an excellent example of that type of case where it is perfectly proper for a trial judge to eliminate completely the jury's consideration of the possibility of a voluntary manslaughter verdict. This is not a case where the court may be arrogating to itself the jury's fact-finding function by telling the jury that it believes there is no evidence of passion and provocation such as would reduce a murder to manslaughter. Nor is this a case where a defendant may be penalized because he completely denied an intentional killing rather than claim mitigating circumstances surrounded it. Instead, it is a case where any evidence of passion or provocation would be irrelevant. The record clearly shows that whoever committed this murder did so pursuant to an attempt to commit rape or sodomy on the victim. Since rape is one of the enumerated felonies, a homicide committed in the perpetration of this crime is a first degree murder. Act of June 24, 1939, P. L. 872, §701, as amended December 1, 1959, P. L. 1621, §1, 18 P.S. §4701. The malice necessary to make a homicide murder is implied from the presence of the intent to commit the felony. The presence of passion or provocation cannot negate this malice. The fact that, at the time the killing was committed, the rapist may have been in a state of passion, perhaps out of rage at his victim's resistance or fear that his felony would be discovered, would make no difference. If he had the culpability to commit the rape, then, when he killed in the furtherance of that felony, he is deemed to have killed with malice. See *Commonwealth v. Meleskie*, 278 Pa. 383, 123 A. 310 (1924).

It may be argued that in the instant case, although rape may be one of the enumerated felonies, sodomy is not, and the evidence is ambiguous as to whether the

victim was killed pursuant to an attempted rape or pursuant to the commission of an act of sodomy. However, as a matter of law, as in the case of rape, the presence of passion and provocation would not mitigate a murder in the furtherance of the commission of an act of sodomy, thereby reducing it to manslaughter.

For a jury to find that the man who committed such a crime was only guilty of voluntary manslaughter would make our system of criminal justice appear especially arbitary and unjust.[1]

What we have just said is not inconsistent with those cases of our court which are cited for the proposition that a jury may properly return a manslaughter verdict even though there was no evidence of passion or provocation. *Commonwealth v. Dennis*, 433 Pa. 525, 252 A. 2d 671 (1969) ; *Commonwealth v. Frazier*, 411 Pa. 195, 191 A. 2d 369 (1963) ; *Commonwealth v. Steele*, 362 Pa. 427, 66 A. 2d 825 (1949) ; *Commonwealth v. Arcuroso*, 283 Pa. 84, 128 A. 668 (1925) ; *Commonwealth v. Kellyon, supra.*[2]

Those decisions can be explained on the basis of expedience.

---

[1] The jury must, however, be told that they have the possibility of returning a verdict of second degree murder. *Commonwealth v. Gibbs*, 366 Pa. 182, 76 A. 2d 608 (1950). In this case, they were told of that possibility. Consequently, the jury's decision finding the appellant guilty of first degree murder, rather than second degree murder, indicates that the jurors were not inclined to demonstrate any sympathy toward him.

[2] Only one of those cases, *Commonwealth v. Kellyon*, involved a murder which the Commonwealth contended was committed in furtherance of the commission of a felony (robbery). In the others, although the defendant did not claim passion or provocation, a jury might have inferred, from its knowledge of human nature, that passion and provocation were present. Even in *Kellyon*, there was some evidence that furthering a robbery may not have been the motive for the killing, but rather that the robbery did not occur until after the victim had been killed as the result of a lover's quarrel.

As pointed out in the second *Frazier* case,[3] 420 Pa. 209, 213, 216 A. 2d 337 (1966): "[T]he Law is not and should not be so foolish as to unqualifiedly release and free without acquittal by a jury, a person indicted for homicidal manslaughter whom the evidence proved was guilty of murder."

The appellant also makes two other allegations of error. First, he contends that the court erred in charging the jury overwhelmingly in accord with and in favor of the Commonwealth's evidence while ignoring appellant's version. Secondly, he contends that the court erred by excessively favoring the Commonwealth in its conduct of the trial. We have examined the record thoroughly as to both points and find them to be completely without merit.

Mr. Chief Justice JONES and Mr. Justice EAGEN join in this opinion.

OPINION BY MR. JUSTICE ROBERTS IN OPPOSITION TO AFFIRMANCE:

It is uncontroverted that in any murder prosecution in this Commonwealth the jury may return a verdict of voluntary manslaughter which must be accepted by the trial court. Notwithstanding this well-settled principle, an equally divided court today affirms a trial court's instruction that the jury *cannot* return such a verdict. Neither logic nor law supports such an anamolous result.

As long ago as 1925 and as recently as 1971 this Court reaffirmed the long-standing principle that a jury in a murder prosecution may *always* return the verdict of voluntary manslaughter: "It has long been settled law of this Commonwealth, following the com-

---

[3] The first sentence was reversed because of an error in the charge. 411 Pa., *supra*.

mon law rule, that, where an indictment charges an offense which includes within its description another offense of lower grade or degree, the jury may find the accused guilty of the less offense; this rule is universally applied in criminal cases, and, *under an indictment charging murder, defendant may be convicted of voluntary manslaughter* and a conviction for the latter crime will be sustained *though it may clearly appear from the evidence that defendant was in fact guilty of a higher grade. . . ."* *Commonwealth v. Arcuroso,* 283 Pa. 84, 87, 128 Atl. 668, 670 (1925) (citation omitted) (emphasis supplied); *Commonwealth v. Hill,* 444 Pa. 323, 281 A. 2d 859 (1971); *Commonwealth v. Hoffman,* 439 Pa. 348, 266 A. 2d 726 (1970); *Commonwealth v. Harry,* 437 Pa. 532, 264 A. 2d 402 (1970); *Commonwealth v. Dennis,* 433 Pa. 525, 252 A. 2d 671 (1969); *Commonwealth v. Cooney,* 431 Pa. 153, 244 A. 2d 651 (1968); *Commonwealth v. Pavillard,* 421 Pa. 571, 220 A. 2d 807 (1966); *Commonwealth v. Fraizer,* 420 Pa. 209, 216 A. 2d 337 (1966); *Commonwealth v. Frazier,* 411 Pa. 195, 191 A. 2d 369 (1963); *Commonwealth v. Moore,* 398 Pa. 198, 157 A. 2d 65 (1959); *Commonwealth v. Nelson,* 396 Pa. 359, 152 A. 2d 913 (1959); *Commonwealth v. Steele,* 362 Pa. 427, 66 A. 2d 825 (1949); *Commonwealth v. Kellyon,* 278 Pa. 59, 122 Atl. 166 (1923); *Commonwealth v. Gable,* 7 S.&R. 423 (1821).

At the very least this traditionally accepted and established rule of law articulated in *Arcuroso* compels the conclusion that the trial court may not instruct the jury that it is not within the jury's province to return a verdict of manslaughter—when in fact the jury does have such authority. Should the jury return a verdict of voluntary manslaughter that verdict *must* be accepted by the court. I must therefore conclude that the trial court's direction to the jury that it cannot return

a verdict of voluntary manslaughter was an erroneous instruction.*

Mr. Justice POMEROY and Mr. Justice MANDERINO, join in this opinion in opposition to order of affirmance.

---

OPINION BY MR. JUSTICE POMEROY, IN OPPOSITION TO ORDER OF AFFIRMANCE:

Today's decision affirming the result below perpetuates the anomoly which was the basis for the dissenting opinions in *Commonwealth v. Matthews*, 446 Pa. 65, 285 A. 2d 510 (1971), namely, that *in some but not all murder cases,* the judge may see fit to inform the jury of its power to return a verdict of voluntary manslaughter even though under the evidence there is no justification for such a verdict (i.e., the accused was not shown to have been acting under the influence of sudden passion caused by legally adequate provocation that placed him beyond the control of reason). See also, *Commonwealth v. Pavillard*, 421 Pa. 571, 220 A. 2d 807 (1966) (dissenting opinion of Mr. Justice COHEN). As pointed out in the writer's *Matthews* dissent, because the choice whether or not to charge is discretionary with the trial judge, and he has been furnished with no objective standards for his guidance, the challenged practice offends due process; because the practice denies the same treatment to similarly situated defendants who happen to stand before differently disposed judges, it violates the equal protection of the laws.

---

* Any reliance on *Commonwealth v. Matthews*, 446 Pa. 65, 285 A. 2d 510 (1971), is misplaced. That decision by a divided Court holds only that a trial court may in its discretion omit an instruction on voluntary manslaughter when there is no evidence to support such a finding. But *Matthews* certainly did not decide that it was proper for the trial court to specifically insruct the jury that it could *not* return a verdict of manslaughter.

The opinion in support of affirmance stands for the proposition that in a felony-murder case, "it is perfectly proper for a trial judge to eliminate completely the jury's consideration of the possibility of a voluntary manslaughter verdict", and that, accordingly, the judge in this case did not err in charging the jury that "as a matter of law . . . manslaughter could not be considered." The opinion does not state that juries *must* be so instructed in all felony-murder cases, nor that it would be error for the charge to be silent on the question of manslaughter, nor that it would be error for a judge to charge that the jury could, although under the evidence it should not, return a verdict of voluntary manslaughter. Thus the trial courts are still left with uninstructed discretion as to when they will or will not advert in their charges to the manslaughter possibility, and in what terms.

If, in fact, the purport of today's decision is to bar the trial judge in all felony murder cases from charging on voluntary manslaughter, the due process objection would be obviated with respect to this category (i.e., felony-murder) of murder cases by supplying a clear-cut mandate; the decision would not, however, eliminate the unconstitutional discrimination between different defendants charged with murder of the felony-murder type on the one hand and common law murder on the other.

The particular justification which my colleagues employ in support of today's decision is that in a felony-murder, wherein malice is supplied by statute with respect to killings which result from the commission of certain felonies, "any evidence of passion or provocation would be irrelevant." Moreover, it is argued that the crime in the case at bar was a particularly offensive one, and for a jury to find that the man who committed it was guilty only of voluntary manslaughter "would make our system of criminal justice appear

especially arbitrary and unjust." This may be so, but does not meet the point.

As stated in my *Matthews* dissent, "as long as we allow juries the latitude we do in homicide cases . . . criminal defendants must be treated equally by informing all juries of the verdicts they have the *power* to return." (Emphasis supplied.) If their power to return an illogical verdict did not reach to felony-murder cases, the rationale of my colleagues who favor affirmance might stand up, but this is not the case. Voluntary manslaughter is as much a lesser included offense of a felony-murder type of first degree murder as it is of the common law variety of intentional and premeditated first degree murder. Thus had the jury in the present case returned a verdict of voluntary manslaughter, the verdict would have been accepted, notwithstanding the explicit instruction of the court. Moreover, the illogical verdict which reflects jury sympathy or extenuating circumstances is not necessarily to be condemned merely because death occurs in the commission of a felony. Is the accused in a murder where death results from a heart attack during a purse snatching any less deserving of jury sympathy than the hireling who kills in cold blood?

I would reverse and remand for a new trial.

Mr. Justice ROBERTS and Mr. Justice MANDERINO join in this opinion in opposition to order of affirmance.