Commonwealth *v.* Cannon, Appellant.

Submitted April 25, 1973. Before Jones, C. J., Eagen, O'Brien, Roberts, Pomeroy, Nix and Manderino, JJ.

*Joseph R. Danella* and *Kenneth S. Harris*, for appellant.

*Louis A. Perez, Jr., James T. Ranney* and *Milton M. Stein* Assistant District Attorneys, *Richard A. Sprague*, First Assistant District Attorney, and *Arlen Specter*, District Attorney, for Commonwealth, appellee.

OPINION BY MR. CHIEF JUSTICE JONES, September 19, 1973:

On June 26, 1970, appellant was convicted of murder in the first degree and assault with intent to kill.[1] This appeal is taken from a sentence of life imprisonment on the conviction of murder. No appeal was taken from the judgment of sentence for assault with intent to kill.

The pertinent facts are as follows: appellant, nineteen years of age, and Gail Bray Cannon were married in August of 1967. On September 1, 1967, appellant and his wife became involved in a marital dispute. When appellant physically abused his wife, she left their apartment and went to stay with her parents, Edna and Ezra Bray. Appellant went to the Bray home to see his wife the day she left and three times the following day. On his first three visits he was not permitted to see her. On the last visit, when he was again denied permission to see her, appellant pulled a

---

[1] Appellant was acquitted of the charge of assault with intent to kill. Indictments on charges of voluntary manslaughter, involuntary manslaughter, and carrying a concealed deadly weapon were nolle prossed.

gun from under his sweater and mortally wounded his mother-in-law, Mrs. Edna Bray. He then turned the gun on Ezra Bray, his father-in-law, but the gun misfired. The appellant's wife heard the shots and ran to her mother's bedroom to telephone the police. Appellant pursued and twice wounded her. When she fled to the basement, appellant gave chase and inflicted several more wounds. He then left the Bray residence and was apprehended three blocks away.

Appellant testified at trial that he had no memory of these events. He maintained that he "blacked out" just before Mrs. Bray was shot and did not remember anything until some time the following day.

Appellant charges the court below with the following errors: (1) the court erred in refusing to suppress the appellant's inculpating custodial statement; (2) the court erred in denying a mistrial; (3) the court incorrectly charged the jury on reasonable doubt and intent; (4) the court improperly refused to charge on voluntary manslaughter; and (5) the court below erred in failing to submit to the jury the question of the voluntariness of appellant's statement.

The claim that the court should have suppressed appellant's confession is grounded upon the contention that he did not have the mental capacity to voluntarily, knowingly, and intelligently waive his right to remain silent. In this connection the appellant introduced the psychiatric reports of several qualified medical experts. This evidence indicates that appellant is a chronic schizophrenic with paranoid tendencies, but that his condition, pre-trial, was in "fairly good remission". There was also evidence that appellant was "oriented in all spheres", and there was no indication that appellant was not able to understand the warnings, consonant with *Miranda v. Arizona*, 384 U.S. 436 (1966), which were given him prior to the giving of his statement.

The evidentiary use of a defendant's incriminating statement violates due process if it can be shown that the statement obtained is not the product of a rational intellect and a free will. *Lynumn v. Illinois,* 372 U.S. 528 (1963); *Townsend v. Sain,* 372 U.S. 293 (1963); *Commonwealth v. Holton,* 432 Pa. 11, 247 A. 2d 228 (1968). The determination of whether a confession is the product of a rational intellect necessitates our consideration of the totality of the circumstances. *Davis v. North Carolina,* 384 U.S. 737 (1966); *Blackburn v. Alabama,* 361 U.S. 199 (1960); *Commonwealth v. Abrams,* 443 Pa. 295, 278 A. 2d 902 (1971); *Commonwealth v. Holton supra; Commonwealth ex rel. Gaito v. Maroney,* 422 Pa. 171, 220 A. 2d 628 (1966). In this instance, while the appellant exhibits chronic paranoid schizophrenia, there is no evidence that his condition prevented him from understanding the significance of the inculpating statement he made to his interrogators. In addition, there is no evidence that police took unfair advantage of the appellant's condition. (*See: Commonwealth v. Willman,* 434 Pa. 489, 255 A. 2d 534 (1969)). Nor that the appellant's third grade education kept him from appreciating the consequences of his confession. (*See: Commonwealth v. Willman, supra; Commonwealth ex rel. Joyner v. Brierley,* 429 Pa. 156, 239 A. 2d 434 (1968)). The totality of these circumstances supports the conclusion of the court below that the giving of appellant's statement was voluntary, knowing and intelligent, and not constitutionally infirm.

Appellant also argues that questioning which elicited testimony indicating he had attended the Glen Mills School[2] was prejudicial because it alluded to the possibility that he had committed other unrelated crimes. The appellant's stay at Glen Mills was first disclosed

---

[2] The Glen Mills School is a Delaware County facility for juvenile offenders.

by him during cross-examination by the Commonwealth: "Q. By the way, I think you did refer to the Testament at one time in your testimony here this afternoon. Who gave you that Testament? A. Who gave it to me? Q. Yes. A. I brought it home from Glen Mills School. Q. Did Mrs. Bray give you a Testament as a wedding gift? A. No." The fact of appellant's stay at Glen Mills was raised a second time during questioning of the appellant by the court: "How long had you lived on Archer Street? A. I think it was the summertime of '66. Q. That was when you first moved there? A. Yes. Q. From Leithgow Street. A. No. Q. From where? A. Orianna Street. Q. That is the same neighborhood? A. Three blocks down, two blocks over. Q. How long did you live on North Orianna Street? A. I don't know, my mother moved there when I was up at Glen Mills School. Q. When were you at Glen Mills School? A. 1964 to 1965."

We do not believe the lower court erred in refusing to grant a mistrial under the instant circumstances. The allusions to Glen Mills were not elicited by the Commonwealth or the court but were offered spontaneously by the appellant during questioning which probed matters unrelated to his stay at Glen Mills. Additionally, even if we assume that it was error to refuse to grant a mistrial on the basis of these disclosures, it was harmless error beyond reasonable doubt. *Chapman v. California*, 386 U.S. 18 (1967). The reference to appellant's stay at Glen Mills could not vitiate that defense in any significant way and should not have compelled the granting of a mistrial under these circumstances.

Appellant next challenges the charge of the court on reasonable doubt and intent. With respect to reasonable doubt, the court instructed the jury as follows:

"Now, reasonable doubt referred to by both attorneys has been set forth in many of our decisions by the

Supreme Court of Pennsylvania as follows: It is that kind of doubt that would cause you to halt, hesitate, *refuse to take action* in affairs of the highest importance of your own lives.

. . .

"Now, if you have that kind of a doubt after you have argued the facts that have been presented before you, both pro and con, applied the law as I give it to you, *if you find that you cannot reach a decision,* then you must have some type of reasonable doubt and that doubt is to be resolved in favor of the defendant and that is so because the Commonwealth therefore has not convinced you, according to the law as described by the Court, convinced you beyond a reasonable doubt." (Emphasis added.) The appellant argues that the court's instruction was erroneous because reasonable doubt has never required the quantum of doubt which would prompt a juror to *refuse* to act if he found he could not reach a decision. In reading the court's instruction *in its entirety,* we find no reason to distinguish the court's definition of reasonable doubt from the instruction expressly approved by this Court in *Commonwealth v. Pearson,* 450 Pa. 467, 303 A. 2d 481 (1973). There is no merit to appellant's claim that the court's instruction here was fundamental error.

Appellant's claim of error with respect to the court's instruction on intent to kill is based upon the following charge to the jury:

"The intention of an individual is often shown by his actions. The use of a gun or other deadly weapon on a vital part of the human body are facts that you may take into consideration to indicate the specific intention to take human life.

"You do not fire a gun, for example, into the head of a man and then come into Court and say, 'Well, I didn't intend to kill him'. His actions would speak louder than words, because the brain is such a delicate

organ that if you injure it with a bullet, death is almost sure to follow. Therefore, that is a vital part of the body and the infliction of a wound there by a gun are facts from which you may infer the intention to kill, even though the defendant or person accused of the crime says 'I didn't intend to kill', but that is for you to determine and not anyone else."

We agree preliminarily with the appellant's position that, although the use of a gun on a vital part of the deceased's body raises the presumption of an intent to kill, the inference is merely a factual presumption which may be overcome by a rebuttal evidence to the contrary. *Commonwealth v. Ewing*, 439 Pa. 88, 264 A. 2d 661 (1970) ; *Commonwealth v. Winebrenner*, 439 Pa. 73, 265 A. 2d 108 (1970). Appellant also contends, however, that the court's instruction was erroneous because it established an *irrebuttable* presumption that the firing of a pistol at the chest of the decedent was evidence, as a matter of law, that appellant acted with the intent to kill. We disagree. The court in fact charged the jury that they could infer the intention to kill even though the appellant gave contrary testimony, but that only the jury could finally decide. Because the court's instruction accurately described a rebuttable or factual presumption, we find no error in this charge.

Appellant's request for an instruction on manslaughter was denied by the court below. Appellant claims that because counsel requested the charge, and because there was evidence to support a verdict of manslaughter, the court's refusal was error. See *Commonwealth v. Kenney*, 449 Pa. 562, 297 A. 2d 794 (1972) ; *Commonwealth v. Banks*, 447 Pa. 356, 285 A. 2d 506 (1971) ; *Commonwealth v. Matthews*, 446 Pa. 65, 285 A. 2d 510 (1971). Where a defendant is indicted for murder, he can of course be convicted of manslaughter. See *Commonwealth v. Dennis*, 433 Pa. 525, 252 A. 2d 671 (1969). But where there is no evi-

dence of the elements of manslaughter, it is not error for the trial judge to refuse to submit manslaughter as a possible verdict. See *Kenney, Banks* and *Matthews, supra.* Without evidence of a sufficient cause for provocation, a state of rage or passion and an inadequate time to cool,[3] the trial court is justified in denying the request for a manslaughter instruction.

The evidence in this case indicates that the appellant and his wife became involved in a domestic argument and that appellant's wife left their apartment to stay with her parents. There was also evidence that the appellant attempted to visit his wife on three occasions and each time was denied admittance to the Bray household. Finally, there is evidence that the appellant made one last attempt to visit his wife and was denied the opportunity; that he asked Mrs. Bray to repay a small loan; and that, as Mrs. Bray tendered the money to appellant, he reached under his sweater, pulled out a gun and shot her. There is no indication that he was enraged and no evidence of adequate provocation. Under these circumstances, the court's refusal to instruct the jury on manslaughter was not error.

Finally, appellant challenges the court's refusal to grant the following request for charge to the jury: "Before considering the truthfulness of the defendant's written statement, you must first determine whether such statement was freely and voluntarily made and unless you are convinced beyond a reasonable doubt that the statement was voluntary, the jury may not consider the statement regardless of its belief in the trustworthiness thereof." Appellant cites *Commonwealth v. Heckathorn*, 429 Pa. 534, 241 A. 2d 97 (1968) and *Commonwealth v. McLean*, 213 Pa. Superior Ct. 297, 247 A. 2d 640 (1968) for the proposition that the

---

[3] See *Commonwealth v. Barnosky*, 436 Pa. 59, 258 A. 2d 512 (1969).

court committed error when it refused to charge the jury that it must decide the issue of voluntariness before considering the substantive accuracy of the defendant's inculpating statement. In accord with *Heckathorn* and *McLean*, our Rules of Criminal Procedure, Rule 323(j),[4] insure the defendant's right to challenge the voluntariness of his statement at trial, even though the court has ruled the statement admissible at a pretrial suppression hearing.

The fact which distinguishes this case from *Heckathorn* and *McLean*, and which renders Rule 323(j) inapplicable, is that appellant did not present evidence at trial that his written statement was coerced, but instead chose to testify that he did not remember giving it. Since the testimony of the interrogating officer was that the appellant's statement was freely given, and because his testimony was uncontradicted, the jury had no facts before it to justify a conclusion that the appellant's statement was involuntary. Viewed in this context, the court properly removed the issue of voluntariness from the consideration of the jury without doing violence to Rule 323(j) or the holdings of *Heckathorn* and *McLean*.

Judgment affirmed.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I must once again dissent from the majority's holding that the trial court, after a timely request by counsel, commits no error in refusing to charge the jury, in a murder prosecution, on voluntary manslaughter. See, e.g., *Commonwealth v. Kenney*, 449 Pa. 562, 570, 297

---

[4] "If the court determines that the evidence is admissible, such determination shall be final, conclusive and binding at trial, except upon a showing of evidence which was theretofore unavailable, *but nothing herein shall prevent a defendant from opposing such evidence at trial upon any ground except its admissibility.*" (Emphasis added.)

A. 2d 794, 798 (1972) (ROBERTS, J., dissenting, joined by POMEROY and MANDERINO, JJ.); *Commonwealth v. Davis*, 449 Pa. 468, 477, 297 A. 2d 817, 818 (1972) (ROBERTS, J., Opinion In Opposition To Affirmance, joined by POMEROY and MANDERINO, JJ.)[1]; *Commonwealth v. Banks*, 447 Pa. 356, 364, 285 A. 2d 506, 509 (1971) (POMEROY, J., dissenting, joined by ROBERTS, J.); *Commonwealth v. Matthews*, 446 Pa. 65, 77, 285 A. 2d 510, 516 (1971) (ROBERTS, J., dissenting).[2]

In my view, the majority again obstructs and obfuscates the salutary and well-settled rule that " 'where an indictment charges an offense which includes within its description another offense of lower grade or degree, the jury may find the accused guilty of the less offense; this rule is universally applied in criminal cases, and, *under an indictment charging murder, defendant may be convicted of voluntary manslaughter* and a conviction for the latter crime will be sustained *though it may clearly appear from the evidence that defendant was in fact guilty of a higher grade. . . .'* Commonwealth v. Arcuroso, 283 Pa. 84, 87, 128 Atl. 668, 670 (1925) (citation omitted) (emphasis supplied); Commonwealth v. Hill, 444 Pa. 323, 281 A. 2d 859 (1971); Commonwealth v. Hoffman, 439 Pa. 348, 266 A. 2d 726 (1970); Commonwealth v. Harry, 437 Pa. 532, 264 A. 2d 402 (1970); Commonwealth v. Dennis, 433 Pa. 525, 252 A. 2d 671 (1969); Commonwealth v. Cooney, 431 Pa. 153, 244 A. 2d 651 (1968); Commonwealth v. Pavillard, 421 Pa. 571, 220 A. 2d 807 (1966); Commonwealth v. Frazier, 420 Pa. 209, 216 A. 2d 337 (1966); Commonwealth v. Frazier, 411 Pa. 195, 191 A. 2d 369 (1963); Commonwealth v. Moore, 398 Pa.

---

[1] Mr. Justice POMEROY also filed an Opinion In Opposition to Affirmance, 449 Pa. 468, 479, 297 A. 2d 817, 818 (1972) (joined by ROBERTS and MANDERINO, JJ.).

[2] Mr. Justice POMEROY also dissented, 446 Pa. 65, 78, 285 A. 2d 510, 516 (1971) (joined by ROBERTS, J.).

198, 157 A. 2d 65 (1959); Commonwealth v. Nelson, 396 Pa. 359, 152 A. 2d 913 (1959); Commonwealth v. Steele, 362 Pa. 427, 66 A. 2d 825 (1949); Commonwealth v. Kellyon, 278 Pa. 59, 122 Atl. 166 (1923); Commonwealth v. Gable, 7 S.&R. 422 (1821)." *Davis,* supra at 478, 297 A. 2d at 818 (Opinion In Opposition To Affirmance).

Given the fact that a jury, in a murder prosecution, retains the inherent dispensatory power to return a verdict of voluntary manslaughter (even absent any evidence to support such a verdict), which the trial court *must accept, Kenney,* supra at 570 n.1, 297 A. 2d at 798 n.1 (dissenting opinion, citing cases) does not "the fair and proper administration of criminal justice [require] that in every murder trial the jury be charged on the elements of voluntary manslaughter?" *Pavillard,* supra at 579, 220 A. 2d at 812 (COHEN, J., dissenting, joined by JONES, J.). In my judgment it does. "The jury ought to be made fully aware of all the verdicts that it has the power and, indeed, the right to return." Id.

Mr. Justice POMEROY and Mr. Justice MANDERINO join in this dissenting opinion.

———

DISSENTING OPINION BY MR. JUSTICE POMEROY:

Appellant having made a timely request for an instruction on voluntary manslaughter, I must again note my disagreement with the law of this Commonwealth which allows the trial judge to decline to so charge because there has been no evidence introduced to support such a verdict. See, *Commonwealth v. Kenney,* 449 Pa. 562, 570, 297 A. 2d 794 (1972) (ROBERTS, J., dissenting, joined by POMEROY and MANDERINO, JJ.); *Commonwealth v. Davis,* 449 Pa. 468, 477, 479, 297 A. 2d 817 (1972) (separate opinions in Opposition to Affirmance by ROBERTS and POMEROY, JJ., joined by MANDERINO, J.); *Commonwealth v. Banks,* 447 Pa. 356,

364, 285 A. 2d 506 (1971) (POMEROY, J., dissenting, joined by ROBERTS, J.) ; *Commonwealth v. Matthews,* 446 Pa. 65, 78, 285 A. 2d 510 (1971) (POMEROY, J., dissenting, joined by ROBERTS, J.). As long as Pennsylvania law permits the jury to return a manslaughter verdict in such circumstances, the Fourteenth Amendment, as I view it, requires that a charge on that offense be either mandatory or totally interdicted; it should not be left to the unfettered discretion of the trial judge whether to charge or not. Until this Court chooses one or the other alternative, I believe the Constitution requires the charge to be given in all cases.

Mr. Justice ROBERTS and Mr Justice MANDERINO join in this dissenting opinion.