458

595 P.2d 1003

The STATE of Arizona, Appellee,

v.

Bruce Duane PORTER, Appellant.

No. 2 CA–CR 1285.

Court of Appeals of Arizona,
Division 2.

July 25, 1978.

Rehearing Denied Sept. 11, 1978.

Review Granted Oct. 5, 1978.

John A. LaSota, Jr., Atty. Gen. by William J. Schafer III and Gregory A. McCarthy, Asst. Attys. Gen., Phoenix, for appellee.

Frank P. Leto, Tucson, for appellant.

## OPINION

HOWARD, Judge.

The determinative issue in this case is whether the court committed fundamental error when it failed to instruct the jury on the issue of the voluntariness of appellant's confession.

Appellant was convicted by a jury of robbery while armed with a gun and kidnapping for armed robbery. He was sentenced to concurrent prison terms of not less than five nor more than 30 years and not less than 20 nor more than 21 years, respectively.

The record shows that appellant was followed by law enforcement officers to a 7 Eleven Market where three of the officers watched appellant commit the crimes. Appellant's defense at trial was insanity. Although he did not testify at the trial, he attempted to show that he was under the influence of drugs and alcohol at the time of the crimes.

Prior to trial appellant moved to suppress his on-the-scene confession and a subsequent confession which was tape recorded. He testified at the motion to suppress that the police did not honor his request for an attorney prior to interrogation. He also stated that he had taken two drugs, Haldal and Trihex, about two hours prior to his arrest, both having been prescribed for a nervous condition, and that he drank three beers while taking the drugs and had smoked a "joint" of marijuana. Although it is far from clear, the parties apparently stipulated that the court could consider that Dr. Beigel, a psychiatrist who had examined appellant, diagnosed appellant's mental condition as schizophrenia, chronic undifferentiated type.

The trial court, after hearing the testimony of the police officers, denied the motion

to suppress and found the confessions to have been voluntary. At the trial appellant presented the testimony of two court appointed psychiatrists who had examined him. According to Dr. Hoogerbeets appellant had been chronically psychotic for years. Both psychiatrists testified that appellant was a chronic schizophrenic but was legally sane at the time of the crimes under the M'Naghten test. Dr. Beigel testified that appellant's capacity to be in control of himself was made more difficult by his mental illness. According to Dr. Beigel a person with appellant's illness could have periods of acute psychosis which would cause him to be out of touch with reality and that manifestations of confusion could indicate that in fact he was not in touch with reality.

Dr. Hoogerbeets did not believe that appellant had been receiving adequate treatment for his illness prior to the crimes. At the time of his examination appellant was heavily sedated with a major psychoactive drug, having been placed on this drug when he was transferred from the jail to the psychiatric unit of the county hospital. The doctor also testified that Haldal is a major psychoactive drug and when combined with alcohol in large doses can cause a person to become sleepy, lethargic, confused or disoriented.

Appellant's brother-in-law, who was a director of a jail rehabilitation program, testified that four days after his arrest appellant attempted suicide and made many other attempts thereafter.

A police officer from Phoenix testified that 10 days prior to the crimes he received a call from a Phoenix radio station to remove an unwanted guest. When he arrived he encountered the appellant who appeared very upset. Appellant told the officer that he had gone to the station to ask for help because he felt that he was going to commit a crime which would violate his probation, and wanted someone to stop him. The only thing the officer was able to do was to suggest that appellant contact the Maricopa County Hospital for psychiatric treatment.

The state had appellant's confessions admitted into evidence in order to counter appellant's insanity defense. The state's witnesses testified that they noticed nothing unusual about appellant and detected no odor of alcohol. Appellant told the police that he had not had anything to drink but had taken some medication for nerves and had smoked half a joint of marijuana. In his statement to the officer at the scene of the crime, appellant described how he "cased" the 7 Eleven Market for two or three weeks prior to the crimes, explained where he got his weapon and ammunition and, in essence, gave a logical and coherent description of the crimes. In the taped confession, appellant admitted that he knew what he had done was wrong. However, on cross-examination, appellant's counsel brought out that appellant stated he had committed two crimes of violence in Raleigh, North Carolina for which he had never been arrested. The officer who took the statement called the police in Raleigh but was unable to confirm that these crimes had ever taken place.

Since appellant did not testify at the trial, the question of whether he had been denied his "Miranda" rights was never presented to the jury, nor was there any testimony that he had been drinking. The evidence concerning the crimes in Raleigh was presumably adduced in order to show that appellant was confessing to crimes which had not occurred, was confused and was therefore out of touch with reality when he made the confession. Neither appellant nor the state ever asked the doctors what effect his mental illness had on the voluntariness of his confessions.

Appellant requested the court to give the following instruction:

"Even though a confession may not have been coerced, if you find from the evidence that a confession was by reason of mental illness, use of drugs, or extreme intoxication not the product of a rational intellect and a free will, the confession should not be considered as having been voluntarily made and you should disregard the confession."

The court refused to give the instruction but instead indicated that it would give Criminal Standard 7 of the RAJI Instructions.[1] However, the record discloses that the trial court failed in both its oral and written instructions to the jury to give the RAJI instruction which it said it would give.

When the state seeks to use a confession which the defendant claims was involuntary a hearing outside the presence of the jury must be held as to the circumstances at the time of the confession and the trial judge must make a preliminary finding of voluntariness. Thereafter, if such a finding is made, the same testimony as to the circumstances may be presented to the jury which *must* be instructed that it should determine the voluntariness of the confession and should disregard it unless it finds it to have been voluntary. *Hart v. Eyman,* 458 F.2d 334 (9th Cir. 1972). The failure of the trial court to instruct the jury as to the manner in which a confession should be considered in their deliberations constitutes fundamental error. *State v. Pulliam,* 87 Ariz. 216, 349 P.2d 781 (1960). However, where the issue is not raised before the jury, no instruction on voluntariness is necessary. *State v. Sears,* 22 Ariz.App. 23, 522 P.2d 784 (1974).

■ While a claim of mental illness will not render a confession inadmissible, it is a factor to be considered in determining the issue of voluntariness and its evidentiary weight. *People v. Boyington,* 3 Cal. App.2d 655, 39 P.2d 867 (1935); *State v. Allen,* 67 Wash.2d 238, 406 P.2d 950 (1965). The fact that the defendant has schizophrenia does not in and of itself preclude the admissibility of his confession so long as he was mentally capable of understanding the meaning and consequences of his statements. *Criswell v. State,* 86 Nev. 573, 472 P.2d 342 (1970). See also *People v. Lara,* 67 Cal.2d 365, 62 Cal.Rptr. 586, 432 P.2d 202

(1967); *People v. Tipton,* 48 Cal.2d 389, 309 P.2d 813 (1957); *People v. Hester,* 39 Ill.2d 489, 237 N.E.2d 466 (1968); *State v. Ordog,* 45 N.J. 347, 212 A.2d 370 (1965); *State v. Powers,* 96 Idaho 833, 537 P.2d 1369 (1975).

■ In the absence of insanity meeting the M'Naghten test, the mental condition of a defendant at the time he makes a statement is relevant to the issue of voluntariness but is not necessarily conclusive. Its weight is for the trier of fact. *State v. Pyle,* 216 Kan. 423, 532 P.2d 1309 (1975). A defendant's confession will be deprived of its voluntary nature when his mental illness is such that the confession most probably was not the product of any meaningful act of volition. *Blackburn v. State of Alabama,* 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960); *Green v. United States,* 128 U.S. App.D.C. 408, 389 F.2d 949 (1967). A confession is voluntary where it is the product of a rational intellect and a free will. *State v. Powers,* supra; *Commonwealth v. Cannon,* 453 Pa. 389, 309 A.2d 384 (1973). To determine whether a confession is the product of a rational intellect and a free will, the totality of the circumstances must be taken into account. *State v. Powers,* supra; *Commonwealth v. Cannon,* supra. We believe the testimony concerning appellant's mental illness raised a voluntariness issue which mandated an appropriate instruction. The failure of the trial court to instruct on the voluntariness of the confession requires reversal. In view of our disposition, we need not consider the other questions presented by appellant.

The judgments of guilt and the sentences thereon are reversed and the cause is remanded for a new trial.

RICHMOND, C. J., and HATHAWAY, J., concur.

---

1. This instruction states:

"You must not consider any statements made by the defendant to a law enforcement officer unless you determine beyond a reasonable doubt that the defendant made the statements voluntarily.

The defendant's statement is not voluntary whenever a law enforcement officer used any sort of violence or threats or any promise of immunity or benefit."